Although it was many years ago, James Simon's restitution order in a criminal case was replete with plain errors. The most prominent of those errors was that he was ordered to pay restitution on relevant conduct, which this court and other courts have held many times, not only is not payable as restitution, but also constitutes plain error when such an order is admitted. The tune that we've said of the actual errors in restitution is some $475,000, so it's not an inconsequential amount. The vast amounts are payable to the IRS. There are other amounts payable to other agencies. For example, two schools that were part of the fraud of which Mr. Simon was convicted disclaimed interest in receiving restitution. At the time of sentencing, the district court thought that a restitution victim had to be paid back no matter whether they wanted to or not. But the statute specifically says, the restitution statute says that they can disclaim restitution, and they did, and so there was another plain error in ordering restitution to them as well. The final issue is not a plain error that was created at the time of sentencing, but Mr. Simon was ordered to pay money to the Department of Education, the majority of which was loans. Those loans have since been paid back, they were loans for his daughter, but that hasn't been credited. And his- You know, you say, good morning, this is Judge Roefner, hello. Good morning, Your Honor. You say that the district court's March 2018 order amended the judgment, thereby opening the door to the types of arguments that Mr. Simon is raising here. But even if that is so, he waited six or seven months after that order before doing anything. Isn't that too long? Judge, in an ordinary sense it would be, but the situation we have here is sort of a circular firing squad related to waiver and forfeiture. The government has claimed that Mr. Simon has waived and forfeited various things, but the government has done so as well. And in a case where you've got a pro se defendant litigant on one side, which Mr. Simon was at the time, and the government on the other side, if you're going to hold them to these high standards of waiver and forfeiture, the government should be so held as well. Below the government- If the government waived the timeliness of Mr. Simon's objections to restitution, why should we be bound by that waiver? Most, if not all of these objections could have been raised years ago at the time of sentencing and again on direct appeal. Why should we allow them to be raised at this late date? One because they are plain error and are clearly wrong and restitution victims are not entitled to windfalls, including the government. That's sort of a merits argument, but on the facts and the law, the government did not object below to the timeliness of Mr. Simon's motion to reconsider. And with regard to this court, they discuss Rule 4B briefly in their response brief, but what they say about the issue is, they don't say that this appeal should be dismissed for lack of jurisdiction. What they actually say is that they asked to modify the district court's decision, meaning they have, and the reason that you should be, I guess, this court should have to deal with it, is the government did not take that position. Why shouldn't we dismiss it for lack of jurisdiction? Because the government has waived or forfeited that request and Rule 4 is not, excuse me, I'll have to say exactly what it's called, but Rule 4 is a, it's not jurisdictional, it is a claim processing rule that can be waived or forfeited. Parts of it are, parts of it are not. You know, you're talking to three former district judges here. I know that this sort of after-the-fact objection is the sort of thing that used to drive me crazy when, if they had been timely raised, we could have addressed them. We could have fixed the problem. I agree, and I would suppose trial and appellate counsel both should have done that. It could have been raised on direct appeal as well as a plain error because these clearly are plain errors, but that's what, plain error not only is for litigants, but the courts, this court, can raise plain error on its own if it sees a plain error. So, Mr. Blegin, if we were to find a path to grant relief and you thought there was an opportunity in the district court to correct those amounts, would the district judge be I hadn't contemplated it, but I would think not if that has already been issued. Well, it's all part of the sentence, and if you want to amend the judgment and say, now, many years later, restitution's not available, the judge might say, well, if that's not available, then I think a fine that takes into account this broader relevant conduct might be appropriate. I think maybe the judge could do that. I suppose then maybe the sentence itself would be subject to be reopened, although he's completed his sentence, his custodial sentence, and is out. But here's one thing that I think is important. The government asked the district court to amend the judgment. They did not ask him to reorder the timing of payment or who gets paid first, as they're suggesting in their brief. The judge wasn't asked to do that, and he didn't do that. The government now claims there's no jurisdiction for the judge to have done that in the first place. Well, what, you know, this probably isn't a legal rule, but what's good for the goose is good for the gander. They reopened it by asking to amend the judgment for a reason, I believe, that for their own benefit. How is it for their benefit rather than for Mr. Simon's benefit? Well, but the sense of it is they were trying to get rid of or lower the amount of restitution paid to the non-governmental entities so that the governmental entity would get paid first. If you agree with that, if you agree with that, what's not, what's the problem? The problem is that the governmental entity is entitled to $380-some-thousand less than they are claiming. I gather we're still some distance away from getting in, from his payments getting into any of the controversial amounts? I don't believe they've reached the... What's the total payment so far on the $1 million or so in restitution? I think the government said it was up to $15,000 or so, but this is not a moot point. Mr. Simon is a businessman who made, legally, significant amounts of money for his prosecution. The issue was solely taxes, it wasn't, nobody claimed that the income was derived from some illegal source or something. He can earn money, and in the future this could be very important. And to go back to your point about the fines, these other entities could conceivably sue him as well if they wanted to. But that's, that doesn't erase the plain error of restitution. Respectfully, this is not like, you know, some Machiavellian scheme by Mr. Simon to sit and wait to see if he could somehow attack the restitution on these bases. It's opened up because the government asked the court to amend the restitution order, which they're now saying couldn't be done. Mr. Blagan, assuming we don't have a jurisdictional issue, what's the statutory authority for the judge to amend the restitution? I don't know that there was an original statutory authority for them to do that. The judge, the government asked him to do it. I understand with the government that I'm asking you, do you think there's statutory authority for the judge to amend it? I don't think at the point of, once it's amended, so let's say Mr. Simon had filed a notice of appeal immediately after the amended order. He would... Could, I have the same question. Could you answer it, please? I don't know that there is a statutory authority. I'm sorry, I thought I had said that, and I see that I'm running into my rebuttal time. But just the one point I would like to make is that the amended restitution order reopens that issue for Mr. Simon to challenge. The statutory authority was the original authority to order restitution, not some amending restitution. They changed the order. He could have, if he had done it within 14 days, have addressed the issue then. He did not, but it's our position that the government waived or forfeited Rule 4B.  Thank you. Thank you, Mr. Blagan. Mr. Whelan. Thank you, Your Honor. May it please the Court, Nathaniel Whelan here on behalf of the United States of America. Before I get any further, Judge Hamilton, to answer your question, as of yesterday, Mr. Simon's paid back $17,448. And the total obligation is? Total obligation remains, or the total obligation left is $1,038,023.65. I think Your Honors, with your questions, it fit the nail on the head, which is just because the District Court amends the restitution orders to two victims doesn't entitle a complete reopening to all aspects of the judgment. It doesn't entitle reopening as to the victims whose restitution was unaffected. It's, I guess, conceivably, defense counsels conceded here could reopen fines. There's no ability to do that whatsoever that I'm aware of. But how do you respond to Mr. Simon's point that your 2018 motion expressly asked that the judgment be amended? And indeed, the Court's order says that, quote, the restitution order is amended. Did that open the door in any way to the types of restitution challenges that he's making? Your Honor, there's no authority that amendment to one part of the restitution order opens up the entire restitution order to a challenge. In fact, this Court has held the District Court may not reduce the restitution figure after the appeals process is over. It doesn't have, this Court has called it subject matter jurisdiction. We cited a Tenth Circuit case that says it's really not a question of subject matter jurisdiction. But that's how this Court's framed the issue. Mr. Whelan, I want to go back to the amendment. What authority did the judge have to amend the order? Your Honor, I think it's probably best classified under 3664K, which talks about the payment order. I think what we, how we've interpreted is the District Court was asked to prioritize different payees. And so it struck Canterbury as an immediate payee of the restitution amount. It then altered the amendment up front of Culver's that the clerk of the court was going to collect to that 48,000 number. And so that's where we think the statutory authority of the District Court lies. Under K? Under K, Your Honor. Yes. I think that's probably the best place to find it. Well, that would be maybe the only place to find it. That's what we've identified, Your Honor. Ms. Simon points out that you didn't challenge the timeliness of the 2018 motions challenging the various aspects of the restitution order. So, did you waive that point? You know, in any way, bound? Your Honor, we certainly didn't waive the argument. There wasn't an intentional relinquishment of a known right. I don't think that we could assert timeliness on a motion to reconsider that's filed seven months after the fact because the defendant is entitled to file a motion to reconsider. The point is, under this court's case law, that motion seven months after the fact doesn't toll the time to appeal. So if he filed the motion to reconsider within that 14-day window, it would have told the time to appeal, and at that point, he could have challenged the March 2018 order. I do think his notice of appeal is timely as to the court's February 14, 2019 order. And that's the order that's in front of this court today. And that's why we talked about Beard and Rule 4B in our brief, just to make the point that the March 2018 order isn't in front of this court. Your Honor, the point is that the district court just doesn't have jurisdiction or a statutory authority to reduce the restitution figure at this late stage in the game. As we know in our brief, some courts have looked at 36-64-0 as granting certain exceptions to do that. None of those apply in this case. And again, this court squarely addressed the issue. These are arguments, I think Judge Rovner correctly pointed out, that the defendant could have and should have made in 2011. Instead, when he was dealing with the restitution at the time of sentencing, he agreed that the restitution was appropriate. He didn't raise it in his direct appeal. He didn't raise it in his 2255. So, Your Honor, there's no argument that the DOE, I'm sorry, the Department of Education and the IRS restitution amounts are at all affected by the district court's order. It didn't touch those. It did make Canterbury no longer an immediate payee, but Mr. Simon doesn't appeal that decision. He's fine with not paying Canterbury up front. And so really what we're left dealing with, I guess, is the Culver's order. The Culver's order still is a subset of the restitution that it was ordered. The district court said that we're going to collect $48,000 up front of the Culver's. And I apologize if it's Culver and not Culver's. I might have ice cream on the mind. But the point is that the court just didn't reduce the restitution figure as we interpret the district court's order. Can I ask you, Mr. Whalen, in thinking about this, should we think about Mr. Simon's, quote, motion to reconsider as a motion to reconsider at all? I mean, it wasn't questioning any relief that, or any modification the government sought. It was seeking something entirely different. I think that is the correct way to consider both of his motions. He filed two, right? He filed the motion to reconsider and a motion to reduce restitution. In his motion to reduce restitution, he says, get rid of the Department of Education restitution altogether. In his motion to reconsider, he says, Judge, you've ordered an improper amount, this $48,000 restitution, because it constitutes what he described as non-tuition restitution. And the court appropriately said that, you know, we've rejected that argument long ago. The restitution is what the restitution is. And now he's coming back on appeal, and he's attacking the IRS portion of the restitution order. He's attacking more of the Department of Education restitution order. And, Your Honors, I guess, importantly, in terms of the Department of Education order, the government's not seeking a windfall as to that amount of restitution. He presented what he believes is evidence that he paid off the loan subject to restitution. We reached out to the Department of Education. They said they believed it was a different loan. And to the extent that he really believes that he has paid off that and he should get credit for that, this court in Barnickel v. United States, which is 113 F. 3rd 704 at Penn State 706, has suggested that a writ of error of quorum novus is the way that a defendant can challenge these calculations and the restitution amount. So he does have a remedy if he believes that he is entitled to a credit for his department. Mr. Whalen, I want to go back to statutory authority. Sure. Because if there's no statutory authority, we don't have much before us. That's correct, Your Honor. So you rely on K, 364. And as I read K, that authorizes an adjustment of the payment schedule based on a material change in the defendant's economic circumstances. Right. Neither you or the government or the defendant has suggested that to the court. So I just don't, that's too slender a read for me right now. And it seems to me we have to confront what authority the district judge should do anything here. I understand Your Honor's point. I think the material change that we rely on is the fact that there's a change in the restitution owed to the individuals up front. But I do appreciate and understand Your Honor's point. And that's kind of where Mr. Simon's appeal runs into a bit of trouble because if he thinks the district court didn't have the authority to do what it did in the March 2018 order, I guess this court's, if it is truly a jurisdictional question, then this court should look at the jurisdiction of the March. Well, the court, the district court could have the jurisdiction to consider it, but then examines its statutory authority. Those are two different inquiries. So I'm suggesting maybe we've got not a jurisdictional problem. I mean, the district court has the jurisdiction to consider the matter, but doesn't have the statutory authority, the other branch of the issue. I understand, Your Honor. And I guess as to that point, if that's how the court's conceptualizing it, it's not a jurisdictional, but a statutory question. That order then is not in front of this court. Right. If it were a jurisdictional question, this court could go back and look at March 2018 because it cannot always consider jurisdiction. Right. If it is a statutory question, then I guess no one has raised that issue in a timely manner. Well, but I think we're required to. Just as we're required to look at jurisdiction, we have to require, we're required to look whether a district court has the statutory authority to enter any order. I mean, if it's derived from a restitution, and that's what this is. Judge, I guess I would question whether this court does have an obligation to look at the statutory authority to consider an order that's not in front of it. I think that would create an interesting question as to whether this court should go back and look at all the restitution orders, or any order in a case that might affect the order that is in front of this court. Well, yeah. No. Certainly you can under 3464, under the prescribed issues that can come before it. And only K, arguably, for me, looks like it's in the zone, so to speak. I understand. I guess my point would just be that I'm not sure that this court should engage in the process of looking at a statutory authority to enter an order that's not being appealed. And that order isn't being appealed. But I guess to the extent this court does review that order, and it doesn't think there's statutory authority, the appropriate remedy, if it finds that order was in error, would be to vacate that March 2018 order, which puts Mr. Simon back in a position where he is paying up front Culver and Canterbury. He has not asked for that remedy. But I do understand, Your Honor. It's a concern of mine. I understand, Your Honor. I share those concerns, Mr. Whalen. And I guess if there is a genuine dispute, in essence, just an accounting dispute about there's got to be some way for somebody to resolve those disputes, right? I agree. As I understand— Is K our best source? Well, I think if there is a crediting and accounting dispute, the defendant could file writ of quorum nobis. That's the remedy that this court has talked about in that situation. I understand Your Honor's position. I've learned a lot about the financial litigation unit and the way we collect restitution in this case. I think what happens is— Actual payments are so rare. It gets ordered a lot. That's correct, Your Honor. And as I understand, what happens is in a situation when the defendant believes that he's paid off part of his restitution, and Your Honor, a former district court judge probably knows this better than I do. It never came up. We never had anybody who actually, as far as I know, actually paid it all. Well, we do have some payments here, thankfully. I think what happens is the money goes to the United States attorney—or to the clerk of the court, and the clerk of the court is essentially the bank. It's keeping the running total as to the credits that the defendant's entitled to as to his restitution amount. If he believes that he has paid and is entitled to credit for amounts that haven't been adjusted in his restitution order, he can file what I've heard done as a motion for accounting, essentially, with the district court. I understand Your Honor's question, which might be, where's the statutory authority for that? I think usually these are all dealt with pretty amicably. We may be with inherent authority at some point. I think that might be right. You know, this is a strange situation where the government tried to amend the restitution order in a way to help the clerk effectuate it, and the defendant kind of saw that opening him to blow the doors open. And here you are. Right. But I do think to the extent that the defendant believes that he's paid off a governmental entity like the Department of Education, what they do is they'll reach out to us, the United States Attorney's Office, with evidence and say, yes, the defendant has paid off the loan at issue in the restitution. We will then file a motion or somehow notify the clerk that that amount's been paid. And the clerk won't reduce the total restitution figure. What it'll do is it will give a credit as to the restitution that's been paid to the governmental entity. It's an interesting procedure all around. Thank you. Unless this court has any further questions, we rest on our briefs as to any other issue. Thank you, Your Honors. Mr. Blanken, you may have an additional two minutes. There's a few points that I would like to make. The government keeps indicating that what they're doing is interpreting the court's amended order. There's no need to interpret the order, first of all, especially by the government. They're the ones who asked for the order, and the language is exactly the same of what they asked for. They've cited it now to 3664K, which they did not cite in their motion, and they did not ask in their motion or anywhere else. And no one ever said in part of these pleadings that this was a reordering, rescheduling, or any of those sorts of words regarding the restitution as to who was getting paid first. The district court judge said he was reducing the amount of restitution. He said he was reinstating the restitution to the Department of Education and to the IRS. That is an amended order which a defendant would be entitled to appeal. Just frankly, we have the language of what the district court said. I don't know why we're here now saying it said something different. Is he entitled to appeal the unamended part? Because it was reinstated, yes. Because he wasn't silent about those issues. He reinstated them, and he is the district court, at the government's request. This is not a situation where they ordered or requested some repayment. And what I really find to be somewhat just personally aggravating is that the errors that a defendant commits or his lawyer commits or he does when he's pro se get held against the defendant, and he's on the hook for an additional $380,000 or $480,000. But the government asks for an order, gets what they want, which reopens the issue, and then the response is, well, we didn't really ask for it. What if the district judge was in error without statutory authority to grant what the government requested, Mr. Blanken? That's my inquiry. It appears that the government is saying now that they asked for an order without any statutory authority. I understand what the government asked for. I'm asking you, as I asked Mr. Whalen, are we to look at whether he had the authority, the district judge, to enter the... It's our position that you should look at what he did. Nobody challenged... No, I understand we're looking at what he did, and I'm saying what statutory authority did he have to do it? As I said before, I don't think there was any. The government didn't cite any to him. And keep in mind, the order was issued the very next day after the government's request. This is not simply, with all due respect, some accounting issue where they're saying he reordered who gets paid first. You can look at what the judge said that he did. You can look at the actual order. You can look at his decision on Mr. Simon's motion to reconsider. He said the opposite of all of those things. He said he's reduced... That's why one of the reasons the district court said, oh, you didn't get notice, but it's okay, was I reduced the amount of restitution. What are you complaining about? The fact of the matter is that the restitution order was wrong in the first instance, and the amended restitution order is similarly wrong because it's based on illegal restitution. And that's the position here. The government also indicates that this could have been raised on a 2255. Restitution issues cannot be raised on a 2255. That law is clear. It doesn't have enough effect on the person's custody, so it's not raisable. Thank you very much for your time, and I appreciate you rescheduling the argument. I hope we can get to court on time. I will. Thank you. Thank you, Mr. Blagan. Thank you, Mr. Whalen. Case is taken under advisement.